United States District Court
Southern District of Texas
**ENTERED**
December 02, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES WHITAKER, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-22-2354 |
| ENBRIDGE (U.S.) INC., | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Whitaker ("Plaintiff") asserts that defendant Enbridge (U.S.) Inc. ("Defendant") violated the Fair Labor Standards Act ("FLSA") by failing to pay Plaintiff overtime.[1] Pending before the court is Defendant's Motion to Compel Arbitration of Plaintiff James Whitaker's Claims ("Defendant's Motion to Compel Arbitration" or "Defendant's MTC") (Docket Entry No. 14). For the reasons explained below, Defendant's Motion to Compel Arbitration will be granted.

### I. Factual and Procedural Background

**A.   Plaintiff's Job and Arbitration Agreement**

Defendant is a company that transports oil and gas interstate via pipelines.[2] Plaintiff works as a pipeline inspector for

---

[1] Original Collective Action Complaint ("Complaint"), Docket Entry No. 1, p. 1 ¶ 1. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2] Defendant's MTC, Docket Entry No. 14, p. 10; Declaration of James Whitaker ("Plaintiff's Declaration"), Exhibit 1 to Whitaker's
(continued...)

Defendant.³ Plaintiff signed a Mutual Arbitration and Class Action Waiver Agreement (the "Arbitration Agreement") as part of his work.⁴

Plaintiff "work[s] in [Defendant's] integrity and anomaly section."⁵ He is "primarily responsible for inspecting pipeline construction and repairs to ensure the application of coating meets" company, industry, and government requirements.⁶ Plaintiff's "job duties also include inspecting the clearing of right of way, trenching, and backfilling, to ensure the tasks are performed safely" and correctly.⁷ Plaintiff states that if he does "not perform [his] job correctly, [Defendant's] pipelines could rupture or explode, causing serious personal, environmental, and

---

²(...continued)
Response to Enbridge's Motion [to] Compel Arbitration (Doc. 14) ("Plaintiff's Response"), Docket Entry No. 18-1, p. 2 ¶ 3.

³Plaintiff's Declaration, Exhibit 1 to Plaintiff's Response, Docket Entry No. 18-1, p. 2 ¶ 2.

⁴Arbitration Agreement, Exhibit A-1 to Defendant's MTC, Docket Entry No. 14-1, pp. 5, 10. Defendant states that Plaintiff was actually hired by FIS Operations, LLC ("FIS"). Defendant's MTC, Docket Entry No. 14, p. 9. However, there appears to be no dispute that (1) Plaintiff was assigned to work on Defendant's pipelines and (2) that the arbitration agreement, if enforceable, applies to Plaintiff's claims against Defendant.

⁵Plaintiff's Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 18-1, p. 2 ¶ 5.

⁶Id. ¶ 4.

⁷Id. ¶ 7.

financial harm."[8] He states that the pipelines "cannot safely or legally operate without such inspection services."[9]

## B. Procedural History

Plaintiff filed this action on July 14, 2022, asserting FLSA violations and seeking unpaid overtime.[10] Defendant filed its Motion to Compel Arbitration on September 20, 2022.[11] Plaintiff filed his Response on October 18, 2022.[12] Defendant filed Defendant's Reply in Support of Its Motion to Compel Arbitration of Plaintiff James Whitaker's Claims ("Defendant's Reply") (Docket Entry No. 27) on November 15, 2022.[13]

## II. Legal Standard

The Federal Arbitration Act ("FAA") states that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

---

[8]Id. 3 ¶ 9.

[9]Id. ¶ 8.

[10]Complaint, Docket Entry No. 1, p. 1 ¶ 1.

[11]Defendant's MTC, Docket Entry No. 14, p. 25.

[12]Plaintiff's Response, Docket Entry No. 18, p. 1.

[13]Defendant's Reply, Docket Entry No. 27, p. 19.

9 U.S.C. § 2. Section 3 of the FAA requires federal courts, on a party's motion, to stay litigation of claims subject to arbitration. 9 U.S.C. § 3. Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement. 9 U.S.C. § 4. "The party resisting arbitration bears the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act." Gallagher v. Vokey, 860 F. App'x 354, 357 (5th Cir. 2021) (internal quotations omitted).

However, the FAA does not "apply to contracts of employment of seamen, railroad employees, or **any other class of workers engaged in foreign or interstate commerce.**" 9 U.S.C. § 1 (emphasis added). To determine whether a worker falls within this § 1 exception, the court "define[s] the relevant 'class of workers' to which [Plaintiff] belongs" and then "determine[s] whether that class of workers is 'engaged in foreign or interstate commerce.'" Southwest Airlines Co. v. Saxon, 142 S. Ct. 1783, 1788 (2022). The § 1 exception only covers "transportation workers," i.e., workers that "play a direct and 'necessary role in the free flow of goods' across borders." Id. at 1790 (quoting Circuit City Stores, Inc. v. Adams, 121 S. Ct. 1302, 1312 (2001)). "Put another way, transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." Id. The § 1 exception is not limited to

"workers who physically move goods or people across foreign or international boundaries." Id. at 1791.

### III. Analysis

Plaintiff does not dispute that he signed the Arbitration Agreement. Nor does Plaintiff dispute that the Arbitration Agreement, if enforceable, applies to his claim. Instead, Plaintiff argues that he belongs to a class of workers engaged in interstate commerce — pipeline inspectors — and that the Arbitration Agreement is therefore unenforceable under the FAA's § 1 exception. Plaintiff offers several arguments for reading § 1 to include pipeline inspectors, based on (1) the holding of Saxon, (2) statutory context, (3) "historical context," and (4) "statutory construction."[14] Defendant argues that pipeline inspectors are not engaged in interstate commerce within the meaning of § 1, emphasizing that pipeline inspectors do not "handle the oil and gas; [or] . . . supervise or direct the transportation of the oil and gas."[15]

A. Saxon

---

[14]Plaintiff's Response, Docket Entry No. 18, pp. 12-15.

[15]Defendant's Reply, Docket Entry No. 27, p. 11. Defendant also argues that arbitration can be enforced under state law and that the collective action waiver is enforceable even if the arbitration agreement is invalid. Because the court concludes that pipeline inspectors fall outside § 1, it is not necessary to address these alternative theories.

Plaintiff argues that Saxon supports reading the § 1 exception to include pipeline inspectors.[16] Saxon stated that a worker must play a "**direct** and '**necessary** role in the free flow of goods' across borders" to fall into the § 1 exception. 142 S. Ct. at 1790 (emphasis added). The Court held that an airline ramp supervisor, who physically handled and loaded cargo onto and off of planes, met that definition. Id. Plaintiff argues that his role is necessary, stating that as in "Saxon, without the work of [Plaintiff] and other pipeline inspectors . . . the goods would not be placed into the stream of interstate commerce."[17] Plaintiff argues his role is direct because he "works directly in the channels of commerce."[18]

Defendant does not dispute that Plaintiff's job is necessary for the safe and legal operation of the pipeline. But Plaintiff's role "in the free flow of goods across borders" is not as direct as the Saxon plaintiff's role. Id. Plaintiff does not handle or transport the oil and gas, and it can physically flow without his inspection. Although Plaintiff directly inspects pipelines, his effect on the flow of oil and gas is indirect. His inspection ensures flow by, for example, identifying needed repairs or

---

[16]Plaintiff's Response, Docket Entry No. 18, pp. 12-13.

[17]Id. at 13.

[18]Id.

ensuring legal compliance.[19] Plaintiff does not state that he has any control or interfacing with the oil and gas or its flow. Although pipeline inspectors may be important and even necessary to pipeline operation, their "role in the free flow of [oil and gas] across borders" in not direct. Id.

Moreover, at least one court has held since Saxon that maintaining an instrumentality of interstate commerce does not, by itself, bring an employee within the § 1 exception. See Holley-Gallegly v. TA Operating LLC, Case No. EDCV 22-593 JGB (SHKx), 2022 WL 9959778, at *3 (C.D. Cal. Sept. 16, 2022). In Holley-Gallegly a truck mechanic sued his employer for unpaid overtime and other claims. Id. at *1-2. The mechanic "serviced semi-trucks that hauled goods almost exclusively across state lines." Id. at *2. Citing Saxon, the court held that the mechanic fell outside the § 1 exception, notwithstanding his "'perceptibl[e] connect[ion] to the . . . instrumentalities' of interstate commerce." Id. at *3. Defendant also cites a pre-Saxon case, Whitman v. DCP Midstream, LLC, Case No. 22-CV-106-JFH-CDL, 2022 WL 1836733 (N.D. Okla. June 3, 2022), which held that pipeline inspectors fall outside the § 1 exception.

Having carefully considered the parties' arguments, the court

---

[19]See Plaintiff's Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 18-1, p. 3 ¶ 8 (stating that Defendant's pipelines "cannot safely or legally operate without such inspection services").

is not persuaded that pipeline inspectors play a "direct . . . role in the free flow of goods across borders," and Holley-Gallegly and Whitman reinforce this conclusion.

## B. Statutory Context

Plaintiff argues that statutory context confirms "[t]hat pipeline inspectors are transportation workers."[20] Plaintiff quotes most of a paragraph from Saxon analyzing the first sentence of § 1,[21] which states:

> . . . § 1 of the FAA defines exempted 'maritime transactions' to include . . . 'agreements relating to wharfage . . . or any other matters in foreign commerce.' The use of 'other' in the catchall provision indicates that Congress considered [wharfage] to be [a] 'matter[] in foreign commerce' . . . [A]greements related to the enumerated 'matte[r] in foreign commerce' of 'wharfage,' to take one example, included agreements for mere access to a wharf—which is simply a cargo-loading facility . . . It stands to reason, then, that **if payments to access a cargo-loading facility relate to a 'matte[r] in foreign commerce,' then [a cargo loader at a wharf] is himself engaged in such commerce.** Likewise, any class of workers that loads or unloads cargo on or off airplanes bound for a different State or country is 'engaged in foreign or interstate commerce.'

142 S. Ct. at 1790 (quoting 9 U.S.C. § 1) (emphasis added). Plaintiff argues that "'if payments to access a cargo-loading facility relate to a matter in foreign commerce,' then pipeline

---

[20]Plaintiff's Response, Docket No. 18, p. 13.

[21]Id. at 13-14.

inspectors—whose work directly facilitates the safe and efficient transportation of oil and gas across state lines—are engaged in interstate commerce."[22] Plaintiff does not explain this comparison, and the court is not persuaded.

C. Historical Context

Plaintiff next argues that "historical context" supports his reading.[23] Specifically, he argues that "[t]he [§ 1] exception enumerates two classes (seamen and railroad employees) and contains a residual clause (any other class of workers engaged in foreign or interstate commerce). . . . The laws in place prior to the enactment of the FAA interpreted the terms 'seamen' and 'railroad employees' broadly."[24] Plaintiff does not explain the scope of 'seamen' at the time of the FAA's passage, nor does Plaintiff explain how the scope of these categories would compare to pipeline inspectors. The Saxon Court rejected a version of this argument, stating that "'seamen' includes only those who work on board a vessel" instead of the entire industry. 142 S. Ct. at 1791. Even assuming that "seamen" and "railroad employees" are broad categories, Plaintiff does not meet the Supreme Court's definition of a § 1 transportation worker, i.e., one with a direct role in the

---

[22] Id. at 14.

[23] Id. at 14-15.

[24] Id. at 15.

free flow of goods across borders.

D.  Statutory Construction

Plaintiff argues that the phrase "engaged in foreign or interstate commerce" should be interpreted in light of its meaning in other statutes.[25] Specifically, Plaintiff points to the fact that a similar phrase was already used in the Federal Employers Liability Act ("FELA") when the FAA was enacted. The Supreme Court had defined "employed in interstate commerce" to mean "engaged in interstate transportation, or in work so closely related to it as to be practically a part of it." Shanks v. Delaware, Lackawanna, & Western Railroad Co., 36 S. Ct. 188, 189 (1916). Plaintiff cites pre-FAA FELA cases holding that various maintenance workers were engaged in interstate commerce.[26] Plaintiff also cites cases interpreting similar language in the FLSA.[27] Despite the statutes'

---

[25] Id. at 16.

[26] Id. at 16-17 (citing Philadelphia & R R Co. v. Di Donato, 41 S. Ct. 516, 517-18 (1921) (workers repairing bridges or watching dangerous intersections); Kinzell v. Chicago, M. & St. P. Ry. Co., 39 S. Ct. 412, 414 (1919) (worker keeping railroad tracks "clear and safe for interstate trains"); New York Cent. R. Co. v. Porter, 39 S. Ct. 188, 188-89 (1919) (worker shoveling snow between railroad tracks and platforms); Southern Ry. Co. v. Puckett, 37 S. Ct. 703, 705 (1917) (worker clearing obstruction from railroad tracks); Pedersen v. Delaware, Lackawanna, & Western Railroad Co., 33 S. Ct. 648, 650 (1913) (a bridge repairman); St. Louis, San Francisco, & Texas Railway Co. v. Seale, 33 S. Ct. 651, 653 (1913) (yard worker who inspected trains)).

[27] Id. at 18 (citing Taylor v. HD and Associates, L.L.C., 45 F.4th 833, 838 (5th Cir. 2022)).

similar language, courts have given the § 1 exception a narrow reading. See Circuit City Stores, 121 S. Ct. at 1310-11; Lopez v. Cintas Corp., 47 F.4th 428, 432 (5th Cir. 2022). The FELA and FLSA cases cannot overcome the fact that a pipeline inspector does not meet the definition of a § 1 transportation worker stated in Circuit City and Saxon.

In summary, Plaintiff — a pipeline inspector — has only an indirect "role in the free flow of goods across borders." 142 S. Ct. at 1790. Plaintiff therefore does not fall into the FAA's § 1 exception for workers "engaged in foreign or interstate commerce." The Arbitration Agreement is therefore enforceable under the FAA, and Defendant's Motion to Compel Arbitration will be granted.

### IV. Conclusion and Order

For the reasons explained above, Defendant's Motion to Compel Arbitration of Plaintiff James Whitaker's Claims (Docket Entry No. 14) is **GRANTED**. Pending arbitration this action is **STAYED**. The parties will submit a joint status report on January 27, 2023, and every 60 days thereafter.

**SIGNED** at Houston, Texas, on this 2nd day of December, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE